Case number 24-1151 et al. United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, ASL-CIO Petitioner versus Environmental Protection Agency. Mr. Peterson for the Industry Petitioners and Olin Corporation, Ms. Rabinowitz for the Labor Petitioners, Mr. Durkee for the Respondents, Mr. Segar for the Respondent Intervenors, Mr. Bellingrad for the Rebuttals. Good morning.  So, Mr. Peterson? Yes. It's my understanding that you will be presenting an opening argument on behalf of the Industry Petitioners and Olin Corporation, is that correct? Yes, Your Honor, and our thought was I would use seven minutes of our total, ten minutes a lot of time, and then Counsel for Olin would do the rebuttal. We'd reserve our three minutes and he would use it for rebuttal, if that's okay with the Court. That's fine, as long as the rebuttal is a true rebuttal and doesn't raise any new arguments. Absolutely. All right. Please proceed. Thank you. May it please the Court, my name is Rafe Peterson. Remand is appropriate in this case. EPA's request meets three basic criteria of the circuit. The agency's offered a reasonable explanation for its request. The request is not frivolous or in bad faith and would not unduly prejudice the non-moving party. First, with regard to the reason explanation, EPA's made clear that it intends to reconsider the 2024 rule in its entirety, including with respect to the issues that are before the Court and other issues as well. They'll provide for public notice and comment, giving all parties to this case and other parties the opportunity to participate. And they've given a timeline, committing to starting the process in June and wrapping up in a year. The request is not frivolous or in bad faith. They've asked to reconsider certain legal and policy priorities, including the four main issues at case here, as well as others. And they have not, as the interveners have suggested, manipulating the process. They simply decided to initiate a new rulemaking. And a change in administration brought on by people casting their votes is a perfectly reasonable basis for an agency to seek a remand of a rule that's currently being considered. With the demise of Chevron, we have to give our interpretation of the statutory text and to the extent that we do that, regardless of what the agency says and what administration the agency is operating under, why shouldn't we, to the extent that there are challenges based purely on statutory interpretation, why shouldn't we just decide those? I mean, after all, Congress wanted to set up this system so that these rules could be in place, and they're already way behind. Yes, Your Honor. Well, I guess a preliminary matter, the Luper-Bright decision didn't displace the standards for remand. It stands for the proposition of a standard of review, but there still has to be an agency action to adjudicate. There still has to be adversarial parties. And with the remand request, and our side agreeing to it, there's essentially no more adversarial proceedings. And I would also add that- There's a disagreement about what the statute means. There is a disagreement about what the statute means, but this case goes far beyond a simple statutory interpretation. Probably the best example- You're right in some policy considerations where the agency allegedly has discretion not within the Luper-Bright best reading of the statute. Maybe so, and maybe the court would consider we don't have to weigh in on that. But on a regulation that's been promulgated and a party has properly raised issues about it, regulated parties, it's properly before us. It's not a big deal. Well, Your Honor, with all due respect, I think it is a big deal in this case because the way this rule has worked, there's a lot of these decisions are intertwined. And so the agency has said that they're going to go back and take a look at the entire process. And so what the people who are opposing this remand are really looking for, as they say in their own words, they're looking for guidance on the new rule. And they're looking for guidance as to the best reading in order to apply it to shoehorn that into other decisions. And we believe that's improper under just the basic criteria of the remand. And these also, I would say that these aren't purely legal questions. The PPE is probably the best example. So there's multiple parties have a fundamental disagreement about EPA's obligations. There's disagreement about the word choices and what it even means. There's a disagreement about whether or not it's right for review. And also there's a disagreement about the standard. The labor petitioners believe that that question should be looked under. You're right. That might be one in the category in which the court might say, especially because it might not be right, you send it back. But you gave the best example to support the point you're making. The other examples, there are a couple of others where they're straight out statutory interpretation questions. And a question as to what the statute means straight up or down. Lots of arguments on either side. The agency has taken a position and review was sought properly. And that's the other way. The remand possibilities are not mandatory rules of law. They're possibilities. That's all. Yep. Absolutely, Your Honor. And it is subject to your discretion. But in this case, for the purposes of judicial efficiency, all of these decisions are intertwined. It's inefficient for us to give our response to properly challenged legal questions that are before us. And agencies always has the possibility of starting new notice and rulemaking if they think it's appropriate. That's not for us to decide. For us to decide is, do we have a case properly before us? And if so, decide it and move on. Right. And we think at this point that for the things that we're arguing that because we're no longer adversarial, there isn't really a case in controversy anymore. As briefed by US EPA, when we conceded to the remand, it's dismissed as a practical matter. There's no more adversity. So in that case, anything that would be offered would be akin to an advisory opinion. And we also think for judicial efficiency- You're clearly adverse on certain of the issues, counsel. You clearly disagree on certain of the legal issues. We do. But no one has any way to predict what EPA is going to do. That's always a problem in administrative law. An agency can always decide, well, let's do this or let's do that. That's not our concern. But they're clearly adverse sides here. There's no question about it. I just spent, Lord knows how much time going through all the materials that have been submitted. There are strong positions being taken on both sides of several of these issues. You're right. There are a couple of them that maybe the court in its wisdom would say, no, maybe this isn't right and leave it for later day. But there are several that are straight out legal issues that have been properly raised. They were promulgated by an agency. There's a regulation on the books. There's a statute on the books and the case is properly before the court. Right. But I do think there is a risk then of piecemeal review in the sense that the agency is, this is going to be back. It's not like it's not going to, it's possibly going to be back before you again. But I think the principles of deferring to the agency and letting the agency take another look at this, they've asked to take another look at it. Where did this court's authority come from to essentially remand to the agency without vacater, without deciding any of the merits of the case? Whether or not there's a case in controversy. So they have. You're not dismissing your lawsuit. You're not seeking dismissal of your lawsuit and the EPA isn't confessing error. Correct. So what are we doing here? I mean, it's article three court. We have a case before us where industry petitioners have challenged a rulemaking on a number of grounds. Where does our authority come from to simply just send the rule back? Well, when the agency asked to have a remanded back and we consented to it or we agreed with it, there's no longer a case, we're no longer adversarial. So there's no longer a case in controversy on the issues that we've been briefing. It's the functional equivalent of having the case dismissed. Is it the functional equivalent? Because the court is still, I mean, you haven't sought to have the case dismissed and the EPA hasn't confessed error. Right. They haven't confessed error. So then I think that just goes back to the typical principles of whether or not they've offered a reasonable explanation, whether or not it's frivolous or in bad faith and whether or not- Let me ask you a question about authority. Where in the APA or in general principles of the judicial power do we have the authority to give that remedy? Where does it come from? Well, your authority to oversee cases and controversies that are before you is the fundamental principle about whether or not this is- Right. But where does the authority come from to give this remedy, to not decide a case, but to basically just send it back to the agency on a rulemaking, not on an individual adjudication or license or some type of particular private action? I mean, you've challenged a generally applicable rulemaking. Correct. And then it's your fundamental, I mean, under the APA, the fundamental right of the court to review that action. We can review it, but then we would have to find that it's contrary to law, that it's arbitrary and capricious, but you're saying don't make any sort of legal determination, just send this generally applicable rule back. Correct. Can you point me to something in the APA that allows us to do that? I can't do it. I'm sorry. I don't think I understand the question. Can I ask this specifically with respect to personal protective equipment, PPE? Mm-hmm. There's an argument that PPE should not be considered a non-risk factor under the statute, right? Correct. And there's another argument that it should not be considered a condition of use under the statute. Mm-hmm. So, regardless of what the administration does on remand, whether it keeps the rule, changes the rule, isn't that legal question going to present itself? I mean, I guess we have to assume that there will be some party that doesn't like the answer that the agency gives to that question and that they will bring a petition. But, I mean, isn't that issue going to still be there regardless of what happens on remand? I mean, I think that's speculative. I mean, we really just don't know. I mean, the agency is going to take back the entire rule and it's going to be subject to public notice and comment, and they're going to try to come up with a policy. I mean, they could find something that would work for both parties, for all I know. And I think that's just... So, it's kumbaya on remand. Yeah. I mean, again, I think that's the purpose of the remand is to allow the agency to take a second look at it through public notice and comment, and all the parties here will then have their opportunity to present their views, and the agency will try to issue an interpretation of PPE. So, we really don't know how it's going to be addressed going forward. An opportunity for years. I'd be shocked if there were more views. There are an awful lot of views out there. At least I've had to wade through an awful lot. Yeah. I mean, I will agree that this issue has been subject to different levels of review, but it's been part of the reason it's been elections. And it still is the prerogative of the agency in first place to promulgate these regulations and try to address these policy decisions and these interpretations. And so, we're asking the court to exercise discretion and grant the request for relief and allow them an opportunity to figure this out. My colleagues don't have any further questions on the remand issue. Thank you for presenting your argument on that. I mean, if you want to pursue it further, that's fine. But given the time, why don't you move on to the merits, and we'll give you time. So, we have three primary issues. And it all goes regarding regulatory framework that is here. But as we've noted in our briefs, they're all intertwined, right? The all conditions of use is our first argument. And in that, EPA said it will not exclude conditions of use from the scope of risk evaluations, but a fit for purpose approach may result in varying types and levels of analysis. And we believe that under TSCA, the EPA has two levels of discretion from the statute. At first, the EPA must determine which uses of the chemical fall under the definition of conditions of use, right? And then second, they publish the scope of the risk analysis, including the hazardous exposures and conditions of use they expect to consider. And we challenge the notion that they will not exclude conditions of use because we believe that was... Wait, wait, wait. You said the first. I'm not sure where you're reading that in the whether a chemical substance presents unreasonable risk. Right. That's their first responsibility. Right. That's the overarching as to measuring it at the possible regulation stage where you would take different uses, which is what you seem to be complaining about. They do it. They just apparently not in the order you want, but the statute does not command what you're suggesting. The statute says the agency conduct risk evaluations to determine whether a chemical substance presents an unreasonable risk. Substance by substance, that is not the same as possible uses of that substance, which they do later in their regulations. Why is that inconsistent with the statute? What words am I missing? Conditions of use. No. Conditions of use talk about... If you read that whole paragraph to determine whether a chemical substance presents an unreasonable risk of injury, blah, blah, blah. Under conditions of use comes at the very end after the instruction and direction to the agency has already been given. And what that is a description is just saying what will happen at the regulation stage. They're talking about then we'll figure out how this makes a difference. What you're asking for is not missing. It just apparently doesn't come at a time that you think it should come. And I don't see where the statute requires that. What does the statute say the agency shouldn't determine whether a chemical substance presents an unreasonable risk? That's exactly what the statute says. It should, but the way the statute works is that first they have to figure out what are the conditions of use? How is this chemical being used? That's not what B4A says. So risk evaluations are based under the conditions of use. That's not what it says. And that's further supported by how the scoping... Because the scoping is they publish the scope of the risk evaluation to be conducted, including hazards, exposures, conditions of use, and the populations the administrator expects to consider. So then they lay out the uses that they expect to consider. When we get to a later stage, after they've considered each substance to determine whether... That's a screening. It's clear what the statute's doing. It seems to be consistent with good science too, to take substance by substance, determine the level of risk. As to how you regulate, that will change. They admit that may change depending upon different conditions of use, but that's at a later stage of the process. There's no threat of industry or anyone else being regulated with respect to a condition of use that you can reasonably show there isn't any concern here. And that doesn't change merely because at the end of the day, it's the use of substance by substance to determine whether, as the statute says, a chemical substance presents an unreasonable risk. That's what the statute says. Well, that actually gets to our second argument, because with all due respect, it does. When they use the whole chemical approach, they put all the conditions of use into one analysis. That's 100 safe uses, and you have one condition of use that they determine as a risk. Then when they move forward to the next level of analysis, the risk determination, by looking at the chemical substance as presenting a risk, all the things that they know do not present a risk will also have to be considered on the next level. And that has an effect on our clients, because it ends up... They end up having sprucious data. So they're producing all this information, and they're spending all this money, and they're essentially being... It's almost like a false determination, because they know that these conditions of use do not pose a risk, but because of this whole chemical approach, they ended up considering them all together as a, quote, substance. Mr. Peterson, though, that's a good argument for why your second point is a good challenge to the regulation, but that still doesn't answer why the all conditions of use part, your first argument, shows that the regulation is unlawful. I guess my question is, why isn't the EPA's interpretation under this first challenge at least a permissible reading of the statute? It may not be the best reading, and there might be other possible readings, but why is the EPA's consideration of all the conditions of use at the risk evaluation stage at least permissible under the statute? What makes it impermissible, I guess? Well, I guess what I said is they can move forward and evaluate all conditions of use, right? We're not disputing that. It's just that the statute doesn't mandate that they evaluate all conditions of use as they're suggested. It doesn't mandate it. So is what EPA did permissible? Because you're saying that what EPA did is contrary to law. It is, yes. So how is it contrary to law? You just said that they're not required to consider all conditions of use, but that's not an argument that it's impermissible for them to consider all conditions of use. It is permissible for them to consider all, but that isn't what they say. What they say is they will not exclude conditions of use, and that's inconsistent with the statute, the plain language of statute, and the entire statutory framework where some of these have hundreds of conditions of use. And part of what Congress was trying to do was to speed up this process. And there's these three-year deadlines on this. And what this ends up doing is no one's biting off more than they can chew. By saying they will not exclude, as they had under the 2017 interpretation of the rule, by saying they cannot exclude all conditions of use, they're tying up their own discretion. But what's the difference between saying they won't exclude any conditions of use and saying we're going to consider all conditions of use? Aren't those the same? Those are equivalent things. No, because they're essentially saying they must include all conditions of use, and that's not in the statute. They will do that. They've decided, as part of their discretion, to consider all conditions of use. That may be bad policy. It may not make a lot of sense. Maybe it's arbitrary and capricious. But I don't see what your argument is that that decision is contrary to law. It's contrary to law in two ways. One, again, it's the definition of condition of use as determined by the administrator. So that gives them discretion where they... And I think EPA agrees on that. The first step... That discretion is about whether the administrator decides something is a condition of use to begin with. So EPA is not... Yep. ...affecting that discretion. They're just saying once the administrator has said these, say, 10 things are a condition of use, we will look at all the conditions of use in a risk evaluation. So that's not eliminating the administrator's discretion to decide what, in fact, is a condition of use. It's the second step, right? It's in the scoping. So in the scoping, then, they're supposed to publish the scope of the risk evaluation and the condition of use they expect to consider. And if you look at the legislative history, it's shown that it makes clear EPA has to make a determination on the condition of use considering the scope, but the agency is given the discretion to determine the conditions of use the agency will address in the evaluation of the priority chemical. I mean, all of this is about prioritizing risk and that they're supposed to look at the things that pose the greatest potential risk. And so by including things that the agency has science and knows that do not pose risk, they're imposing harm upon our clients, imposing its cost, and they're requesting information. And it's also ensuring that they're not going to meet any of their deadlines, because there's a three-year deadline. And that's exactly why this law was amended in the first place, because Congress realized they weren't able to get through any of these chemicals. So this is really all about prioritization and attempting to focus on the things that raise the greatest potential risk. Where in the statute does it talk about that prioritization? Prioritization is the first step in the process. So the first step is they're picking the chemicals, 10 or 20 chemicals that are going to be prioritized for review. Sure. So once they've decided that, where's the language about the prioritization of particular risks of a chemical that's already been prioritized? As we were saying, that's in the legislative history. Legislative history told them to focus... That's where it was in the statute. It's not in the statute. It's not in the statute, no. But what is in the statute is scoping. And we believe that the scoping should be interpreted that they're given this authority to exclude conditions of use that they have information on that are not otherwise posing a risk. And it's pretty simple. And that's the process, and that's how it worked. And I think, again, it's going to allow them to deadlines, and it's part of what Congress envisioned. And they haven't explained... That was how they interpreted it in 2017, and they haven't explained adequately their switch on how they're now making risk evaluations. So they haven't justified the change. All they say is that they just cite to the legislative history, but as we've pointed out, we think the legislative history favors our argument. And it also affects... Can you say about any of the other arguments in your brief? Well, it also affects preemption. I mean, another big point of this is that if they don't focus on the conditions, preemption is driven by conditions of use. And preemption is important to the chemical manufacturers, and it's important to the states. And so, again, if they're making findings that a substance... You can't preempt on the basis of a substance. You can preempt on the basis of uses. Certain chemicals are safe in a manufacturing process in a closed-loop system that are not safe if used by a homeowner in their basement stripping paint or something. And preemption is really important to the statute, and it's driven by the decisions made in the risk evaluation stage. And so, I think that's another thing that really supports our argument, that all these decisions should be done conditions of use and not done... The agency does have authority if it's necessary to look at worst-case scenarios, et cetera, but it's not... Then they just have to describe what they're doing and why. So, you would have wanted the statute to say in B4A, the provision should have said, to determine whether a chemical substance presents an unreasonable risk of injury to health or the environment under each condition of use. That's not what the statute says. And that's the difference here. And that's what you're arguing. And you keep ignoring... I keep reading your brief. It's really kind of strange because you skip over the telling parts of the statute that are absolutely inconsistent with what you're arguing. And what you want is what I just read. I was trying to figure out. That's the formulation you wanted, which proves the point. You didn't get it. It's not in the statute. That's not... Each is not there. But the each is done at the scoping level. No, no, no, no. You can't disregard the five prior lines in the statutory provision, which says the agency is expected to determine whether a chemical substance presents an unreasonable risk. Under the conditions of use. They eventually say... That's what you're... You're doing that so you have the material to deal with it when you get to the regulation stage to determine whether a particular condition of use should be regulated. You're not losing what you want. The protection of... Against regulations where there is no real risk. That's the thing that's so strange about this. You're getting what you want. It's just not in the order in which you want it. Well, I will say that the importance of the conditions of use is that it lines up all... It's the only way to look at a chemical. They look at the chemicals based on looking back at the definition of how they're used. Is it in manufacturing? Not the only way to look at a chemical. You can take a chemical as a whole and part of what's going on here is screening. On certain substances, in the way the agency is proposing what the statute requires, you screen out certain substances because you find out no risk. Absolutely. Okay. And that is a perfect, not only good approach as I understand it from science, but it's what the statute says to do. Take each substance. One by one, determine level of risk. And some are going to show none. They're gone. So they don't even get to the stage where you're thinking about whether or not to regulate and to what extent, which brings in conditions of use. That's what that last hanging couple of words in the statutory provision is referring to. When you get to that stage, yes, of course you look at the definition of it. What we're saying is you start at that stage. I know you. Are they manufactured? Well, it's the only way to have a workable program. So they start off looking at manufacturing, processing, again, several hundred to a thousand different conditions of use. They can't just look at them all at once. A chemical acts differently if it's being used as a pesticide, if it's being used as an additive to a gasoline, or if it's been used in a children's toy. And each one of those is a different determination that has to be done by the agency. And so you- And it eventually is done if and when we get to the stage of regulation where there's a question. But the problem is that- And what we won't waste time doing at that stage is worrying about substances that they've already determined present no risk of use. I mean, no threat. But the real problem with the rule is that they don't articulate what the court is saying here, because when they get to the risk determination, and this is why we have a due process argument, we don't know what they're going to do with that information. We know, yes, this is not presenting a risk. I can say- And they know that. The parts of their brief that make it pretty clear that that's what they intend to do at the later stage. It's plain as day. I mean, I- It's post hoc. It's not described in the- It's not described in the rule. And then, so you're going to end up with a whole chemical where you're having 99 safe uses, one unsafe use, and yet you're going all the way through risk determination on all of the uses when they should have- They could have been screened out. They're meant to be screened out at the scoping stage, because they're not posing a risk. They should focus on the hazards as opposed to the greatest risk. And again, it's these different categories of manufactured, processed, distributed, and commerce used or disposed of. I mean, they use or. So, you're looking at these different uses, and it has a real impact on the agency, because the agency isn't going to be able to get through these decisions. And then, as we put in our declarations, it has a real impact on our clients, because they're forced to answer questions and respond to requests for information, et cetera, costing millions of dollars for conditions of use that pose no risk. But they are pulled into that process. And then, companies deselect, and you have people thinking, well, if it's a risk, why don't I find another chemical? So, it has this failure to do it at the front end where they're supposed to has real-world impacts on the industry. All right. Any of the other issues you want to say anything about? Are you going to rest on the brief? Just give me one. Finally, I would add, you know, again, this is not a hazard law, right? It's a risk law. And so, the interpretation that is being offered by EPA is treating them more in terms of hazards, not of risks. And the law was written to look very specifically at different risks as they're actually the actual conditions of uses. And when you use the whole chemical approach, you're essentially creating a hazard law, and there's other agencies that look at that, right? It's not like these aren't being, and that's, you know, part of our argument on usurping the role of OSHA. You know, they're ending up making decisions that are looking more at hazards than actual conditions of use. And that to us is really the core. Those are the most important words of the statute to us, because that's the core of what holds together and drives all the decisions. It's looking how they're actually manufactured, transported, used, and each one of those is, and that's how it works, too. I mean, that's how they, you know, they'll have 50 or 100 of these, and they compartmentalize them. I just have one question about your PPE argument. So, the EPA's regulatory language here seems to me, at least arguably, somewhat obscure. It says, EPA will not consider exposure reduction based on assumed use of PPE as part of a risk determination. And industry petitioners understand that to mean EPA won't assume that employers are complying with OSHA regulations. But the actual regulatory language doesn't make any mention of what assumptions are, you know, sort of off the table, like whether it's OSHA, regs, or something else. So, how should we understand this language? Because industry petitioners assume that this is about, you know, about PPE use under OSHA regulations. I mean, the way we look at the full, you know, the whole sentence, I mean, in a nutshell, I mean, they'll consider any available information that PPE will not work, and that there's noncompliance, but they will not consider whether or not it works. And so, they're not willing to, because I think it is, I'll say, it's not, it's a clumsily written sentence, but we read it, and the way it's been implemented is that they're basically not considering PPE and risk exposure. So, that is inconsistent, you know, plainly inconsistent with the statute for a number of reasons. It's best available information, I mean, information that EPA possesses or can reasonably generate, obtain, and synthesize. So, if they're presented that information, it should be considered. And EPA shall take into consideration hazard and exposure information. Again, PPE goes to exposure. And so, it really, it should be a key part, and it leads to decisions that are, and we give some examples where, because they don't consider PPE, and OSHA does, for example, they set limits that are much, much lower and harder to achieve, whereas, had they simply used PPE, they would reach a different conclusion. So, they're basically not considering it at all. But isn't there a sentence later on that same image looking at JA-45 in the far right column about midway down, the paragraph that begins with, other commentators took issue, and about seven lines down, they say, the proposed change in this rule is that EPA will not assume use of PPE for purposes of the risk determination, not that EPA will assume no use of PPE. Likewise, EPA is not asserting there's widespread noncompliance with OSHA requirements. Yeah, I think that language is kind of inconsistent with what they wrote, though, right? Because they say EPA will not consider exposure of risk reduction based on assumed use of PPE. And that, for all intents and purposes, means they're not considering it. I mean, you could take out the assumed... You're supposed to say that they meant what they said in one sentence, but, you know, a few paragraphs later, they didn't mean what they said in the other sentence? Well, the regulation that they promulgated says they will not consider exposure reduction based on assumed use of PPE as part of the risk determination. And that's how, and that's also, and we briefed this, that's also what they're doing. They're not using it at that stage of their analysis. So they've lived up to it. And again, we think it's arbitrary because when they will take into account available information due to the absence of it. So it's internally inconsistent that they're... And one thing, they respect the fact that they have to take into consideration the exposure information given them, but they say a certain category they're not willing to consider. I mean, why isn't the fair reading of this that, you know, the statute requires them to take into account available information and the best science, right? They shall. And why isn't the best reading of that is that we're not going to make assumptions, but where we have information about how PPE is used because there is data on that and what compliance rates there are, we're going to take that into account. Why isn't that what really they're saying? The reality is that's not how they're interpreting. They're not, they're making they're doing risk evaluations without considering its use and they're setting exposure limits based on it not being used. And so again, as you pointed out, I mean, they're supposed to, it's basic information that they normally would have, right? Some of these chemicals have been regulated for decades and it pertains to exposure information. So if they do have this information, I don't know how else you would use it other than assuming that PPE works. I mean, the purpose of it is to address exposure, right? A pair of gloves, you know, a mask or whatever it is. And so they're engaging in, you know, this kind of strange word game where they're saying, well, you know, we're willing to consider that it's ineffective, but we're not willing to consider that it is effective. And that's because they won't assume that it reduces exposure. That's effectiveness. I mean, OSHA writes violations every day because people don't use PPE. You know, I love HGTV and other shows of that nature. And I see people cutting countertops and tearing off walls that probably have lead paint and asbestos in them and all sorts of things. And they may have no masks at all on or some sort of a bandana that's not really a problem. Right. Well, I mean, we know that there are lots of rules and regulations about what's supposed to happen, but isn't the EPA trying to regulate here? And isn't the Congress requiring the EPA to mandate to regulate based on the real world and what we know about PPE use? And why isn't that essentially what this rule says it's doing? Well, they are. Because it's the conditions of use, right? In your scenario, they would set the events of different for Johnny homeowner, you know, tearing out asbestos as opposed to a highly regulated industry that's working with a similar product where the use is mandated. And they've said in the past that they wouldn't assume noncompliance with OSHA regulations. So they've said that in the past. And that's, you know, that's a sound decision. Right. So these, it's all again, it all comes back to the conditions of use. The product that's available to a homeowner would be given a different level, a different assessment of the exposure than to something that's an additive to a gasoline and a closed loop system in a manufacturer in a highly regulated industry. So they get to that because it's, again, it's all driven by the conditions of use. And, you know, our point is in the highly regulated industry, they're basically saying we're not going to consider the obvious fact that everybody there is highly regulated by OSHA and wearing masks or using whatever PPE is supposed to protect against whatever exposure, but they will, for some reason, consider the absence or ineffective use of it. And that's, that's contradictory and arbitrary and capricious in the manner of which it's all driven by the same decision of taking into consideration hazard and exposure information. PPE is at its base, exposure information. And if they have that information, they should deal with it at the risk evaluation level, if it's presented to them. And they're saying they're not going to, they're not going to consider it because they say they can't assume that it works. Well, then they're not really, if they can't assume it's going to work, then why consider it? It's not, in that case, it's not being considered at all. I just want to, I want to ask, I want to make sure I understand both for us of your argument on the point we were discussing earlier. And in, um, isn't it true that aggregations of various conditions of use may produce different levels of risks? Yes. And under, and under, if you do it in the way that you're proposing the step, won't you eliminate a full understanding of that? If you eliminate a condition of use? No, absolutely not. As a whole, you surely will find all of the, you take the substance as a whole and measure its risk. You have all of that information. Well, the, the aggregation is dealt in the information of what the statute says is, and she should describe whether aggregate or sentinel exposures to a chemical substance under the conditions of use were considered and taken to account were relevant, the likely duration. So the agency always has the discretion to do that. We're not saying that they shouldn't do that. They always should consider these aggregates. What they've essentially done in following the statute exactly as written is to consider the substance as a whole in the beginning. And they have all of that information when they get to the regulation stage and they, and they look at different conditions of use because as I'm standing, I just, and I don't think I'm missing it now. Your only concern is you might get caught in the regulation stage and have a regulation where the condition of use didn't warrant it. And the agency has made it absolutely clear. All you, although you're saying it's only me and you didn't see it in their argument, which I don't understand, they are saying that is absolutely accounted for pursuant to notice and comment to the parties who will know that with each regulation as to specific conditions of use, here's what they're proposing to do. Well, when they, the problem is when they, they're going to address it at the next stage, right? So that before there's any regulation, which of course is what I was representing industry. I would want that too. You can't regulate us without making a determination as to whether there's real risk here on conditions of use. They have said that is exactly what they're intending to do. But the harm is in the process, right? So they're ending up. I'll have to hear their response to it. I'm not getting where your harm is coming from if the agency follows a procedure, which puts as a statute says, determination as to whether a chemical substance presents an unreasonable risk. That's the direction in the statute. I don't understand where all the cost is building up if they do that at the front end, and then they consider the conditions of use regulation piece of it at the point when they may want to regulate. Right. So what happens is though, then they, you know, the regulating industry is supposed to provide, is forced to provide data to EPA about all the uses, right? And they're forced to provide, even though it's, they pose no risk, forced to comment on rules on chemicals that they use in manufacturing. That's not the answer. Even those that don't, that's what they're trying to determine. But measuring the substance, that's what they're doing. They're trying to determine where might there be problems and where are there none? And is this a substance with respect to which there are no problems? And if so, then we're done with that substance. That's the way the statute's written. But they, well, the statute is again, is we believe it's not written that way in the sense that, you know, the substance is the substance, big S is deemed to pose an unreasonable risk, you know, regardless of the fact that nine out of 10 of the uses do not pose an unreasonable risk. Our point is that those should be let out of the process earlier and not have three to five to six years where you're not going to hear it's affecting preemption. You want to do the last stage first, even though no determination about regulation has been made. And so my question to you is why would they want to waste the time there? They just want to understand the substance. Is there a possible risk here? They're not saying that that equals enough risk with respect to every possible condition of use that they found, warranting regulation. Well, the thing is they were supposed to get through this all in three years. And it's just not possible if they consider every conceivable risk in the scoping stage, every conceivable risk as they work their way through it. And that's a reality of what is happening. And it has real impacts and it has market deselection. And it also has impacts on preemption because, you know, if a state, you know, all these decisions, if you say the substance itself poses an unreasonable risk and every single use, even uses that are known to not pose a risk, the preemption follows that. So every state and everywhere else that it's working, you know, that's going to then drive that decision. And so it really, you know, that's an important thing to our clients as well. I can't argue with you there because I don't have the information, but that sounds profoundly ridiculous that if I'm in a state and all I see is the first inquiry, and there's no determination that the agency has made to regulate the condition of use with respect to that substance, I'm going to go ahead and act with respect to anything anyway? That makes no sense. Well, the way the preemption works is that it's driven by the scope of the risk evaluation. And so for this period of time, before they get to the regulations, it's the, every use is deemed, every use, all 100, 200 of them is deemed opposing risk. Whereas if they were making the decision earlier, then those uses could continue and it's not preempted. So that is a big deal to the statute and a big deal. And that might be one of the biggest effects here is that, again, by not making these decisions as Congress meant at the earlier stages, you're changing really everything. You're changing the way the chemicals are bought and sold and manufactured. You're having parties decide maybe to no longer use because EPA says the substance poses a risk, even though there's a different risk if it's Judge Wilkins' homeowner show versus a chemical manufacturing plant. I mean, they're, that's why the conditions of use are so important. It's based on risk evaluation, not something being hazardous. There's other laws that deal with a chemical being hazardous. This is supposed to be very focused on the priority chemicals. And then the priority, the most important risks, the ones that really pose a hazard. So they know how to regulate. So they know how to regulate. That's what this is all being done. And that decision is made until they have made an evaluation with respect to the conditions of use where they think there's a threat. I would say, Your Honor, they did know how to regulate in 2017 because the regulation that they promulgated then was consistent with statute. And they do, their proposal now is they're sort of a little bit of martyrdom almost. I mean, they're taking on more work and more analysis than they can possibly handle. And they're not getting through these regulations and the regulations are having the effect that we talked about. Not using PPE is having these effects with how they're setting exposure ratios. It's having an effect on preemption. So the concerns we raise are real and occurring. Thank you. We'll give you some time. Well, we'll give your colleagues some time to rebuttal. Why don't we hear from, I believe it's the labor petitioners. Thank you. Good morning. I'm here on behalf of the United Steelworkers, the International Association of Machinists and WorkSafe, and our petition is confined to the PPE issue. So can you start with standing? How have labor petitioners demonstrated standing here? There are no declarations. There are no, I mean, where's the demonstration of standing? That's required. The court's rules require that we provide declarations if the standing is not obvious. We are membership associations by law and our members are exposed to these hazardous substances. And I will say that I've been involved in a number of cases under OSHA where the exposure was at issue and we have never submitted declarations to the court. And it's never been questioned. And we would, I mean, that is irrelevant to our independent obligation to assess standing for, because you are seeking different relief from the other petitioners. You have to maintain your own standing. I would be happy to submit a declaration tomorrow. And it shows that the steelworkers have members who are exposed. That's not what our case law says. Briefs can't serve as evidence of standing. In the past, we have never had a problem and we've never been asked to do it. And so we did not do it. Under our authority, if you are trying to establish associational standing, you've got to demonstrate either from something that's in the record or by declaration that, you know, you have one or more members of your association who are regulated or harmed or injured by the agency action. Is there some something you can point us to in the record that establishes that? Our comments in the record establish that our members are exposed in various conditions of use. And there was a case before the Ninth Circuit on the agency's initial risk evaluation for methylene chloride where the steelworkers put in a declaration. And I'd be happy to provide that to the court. The steelworkers and the machinists represent many employees in manufacturing sectors, particularly the chemical manufacturing sector, that are directly regulated under TSCA. And we have submitted declarations in many cases that indicate that and I'd be happy to provide that to the court. We did not do it in our briefs because we thought it was obvious and not necessary. I can't pretend we did. Right. Your comments are very generic. I mean, you know, I mean, it seems almost, you know, I'm sure there are workers who are harmed by this rule, but that's not... We have members exposed to virtually every chemical that EPA has been considering. And we have participated in each of those rulemakings. Why don't we move to the merits? Okay. Well, we would like, we urge you to decide this case on the merits. And I'd like to start by rebutting some of the things that my colleagues for ACC mentioned. I think... To the extent that they're on the remand issue, I mean, to the extent that the agency, I mean, intends to reconsider this rule and it's likely to, you know, come out of that looking a lot different than it does now and probably more similar to the 2017 rule. You know, why isn't this just a big kind of judicial waste of time for us to adjudicate this rule that's, you know, not long for this earth? I would say for two reasons. First, we and industry take diametrically opposed competing statutory... We offer competing statutory interpretations. We say they can't consider PPE. Industry says they must assume PPE use. Under this court's decision in utility solid waste activities versus EPA, which EPA thoughtfully cited for us in its motion, this court looked at a number of factors in deciding whether to remand or whether to address the merits. And one of those factors was whether a statutory interpretation would narrow the scope of the agency's discretion on remit. And we think that that's what the court ought to do here, because it has a live controversy where the competing statutory interpretations have been fully briefed and it would prevent EPA from coming up with a new rule that is outside the scope of what the statute gives its discretion to consider. All right. So on the merits of your PPE argument. So first I'd like to address the industry argument, because of course, if they win, we lose and vice versa. So I think there's been a lot of confusion here. We think it would be reasonable for EPA to assume compliance with OSHA regulations. But the fact remains that no OSHA standard requires employers to control toxic chemical exposures at all levels of exposure. And no OSHA standard permits routine reliance on respirators as a means of protecting workers. Employers are required to comply with OSHA exposure limits, not to exceed them. The levels of exposure of concern to EPA and where it has found unreasonable risk are at least one order of magnitude below any level that OSHA has ever regulated. Even if OSHA regulations are not as protective as you suggest they should be for exposure to workers, I mean, wouldn't that be part of what EPA would be considering? They're not considering, you know, they're looking at what the OSHA standards do. And if they're not, you know, addressing the risk sufficiently, then EPA can take further action, right? So the fact that the OSHA regs might not be, you know, sort of as protective as you might want them to be for workers doesn't really say whether they should be part of EPA's understanding of risk. Correct. Completely agree. So I'll give you an example. So the industry, the only regulation that they say EPA has ignored is OSHA's methylene chloride standard, which is what industry sites. OSHA's methylene chloride standard sets a permissible exposure limit of 25 parts per million. At that level of exposure, OSHA found that 3.6 per 1,000 workers would continue to get cancer. It didn't set the exposure limit at 25 because it fully protects workers, but because it would be infeasible for industry to routinely go lower relying on engineering control. EPA has found cancer and liver toxicity risks at two parts per million. OSHA doesn't regulate those risks. And so this whole debate about compliance with OSHA regulations or compliance with OSHA regulations is really sort of beside the point. Besides the fact under this court's decision in the United Steelworkers, the original lead case, any OSHA standard, no OSHA standard, sorry, no OSHA standard can routinely rely on respirators all the time. An OSHA standard that relied solely on respirators would by definition under this court's jurisprudence be infeasible and it would be a standard that OSHA is not authorized to issue. So we think that this is just sort of a big beside the point. The second question on our argument, we think that the best available science and the direction that EPA not consider non-risk factors during risk evaluation requires that EPA not take respirators or PPE into account until the risk management stage. While PASCA requires EPA to integrate exposure and hazard information, our argument focuses on how you define employee exposure. Employee exposure assessment protocols require that exposure be measured without regard to respirators. For the past 50 years, this long-standing industrial hygiene practice has been incorporated into every single OSHA standard. All OSHA compliance measurements and employer measurements taken to comply with OSHA standards do not take respirators into account. NIOSH follows this practice as well. All the epidemiology studies describing the health effects of chemicals rely on measurements taken without regard to respirators. The practice is so pervasive that EPA has adopted the same definition of employee exposure in several risk management standards. The reason is simple. You attach a sampling tube inside a respirator's face piece, you break the seal, meaning it no longer can function the way it was intended. Against this background, we submit that taking respirators into account is simply not the best available science. Doing so is unprecedented. Despite decades of occupational risk assessment practice by various federal agencies, neither EPA nor industry has pointed to a single example of a federal risk evaluation where exposure measurements were reduced by evidence of the absence or ineffective use of respirators. As NIOSH told EPA, taking respirators into account is not a best practice. We also believe that TASCA prohibits EPA from taking non-risk factors into account, that by prohibiting EPA from taking non-risk factors into account, EPA cannot consider respirator use until the risk management stage, because it's a method of controlling exposures, and that's the appropriate point in time to do so. And if EPA takes respirators into account, and it makes a risk determination based on some fraction of measured exposure, inevitably the agency will either have no duty to protect workers from exposure, or its risk management rule will aim to eliminate less risk than really exists. Either way, taking respirators into account during risk evaluation means mandatory TASCA rules will provide less protection to workers than TASCA requires. And we're not urging that EPA ignore respirator use. It is a reasonable means of controlling exposure, and it should factor into their risk management decisions. And so we think the difference here, though, is subtle but important. If EPA relies on voluntary respirator use, and again, if OSHA does not require it, and employers are providing respirators anyhow, then the respirator use is voluntary. If they rely on voluntary respirator use to avoid setting mandatory exposure standards, then there is no enforceable limit to protect workers from overexposure. If EPA takes PPE into account during risk management, it will be required to issue mandatory enforceable standards that protect workers. In conclusion, EPA is required to rely on the best available science. The well-settled practice of occupational exposure assessment does not take respirator use into account when measuring exposure. Both OSHA and NIOSH told EPA it was contrary to the best practice to consider PPE during risk evaluation. Neither agency does so. Doing so inherently underestimates risk, and for that reason, it violates EPA's duty to protect workers from unreasonable risk. Thank you. Thank you. We'll hear from respondent, EPA. Thank you, Your Honor, and may it please the Court, Dan Durkee from the United States Department of Justice, and with me at council table are Rachel Martinez, also with the Department of Justice, and Eric Gilliam from EPA's Office of General Counsel. And, Your Honor, I'd like to start with Judge Rau's question at the outset about the Court's power, the Court's authority to issue a remand here. What we're asking for is the Court to We're asking for the Court to hold the case in abeyance while the agency proceeds with its announced intention to undergo reconsideration. That power stems from the Court's inherent authority to manage its docket. We're not asking the Court to take any action on the actual underlying regulation, to vacate it, to uphold it, to adjudicate it in any way. So the Court does have, and I think that's been recognized in the Court's precedence, when the Court grants voluntary remand. So the source of the power is the Court's authority to manage its document. All we're asking is that the Court stay its hand, not make a decision on these issues while the agency undertakes its process. Where there are still petitioners challenging the lawfulness of a regulation, we're in effect, I mean, issuing a remedy, remand without vacater. The place I disagree with you, Your Honor, is there's only one potential issue that could be true. And as we explained in our motion, we don't think the labor petitioners are prejudiced in any way. There's four legal issues. Three of them are brought solely by industry, and they're okay with remand. They're saying they're not, they don't want to engage. The PPE issue has both industry and labor. Within that PPE issue, there's several different, let's say, there's several paths, there's several flavors. There's the argument that you just heard about the assumption of whether EPA should assume PPE or not. We think, as we explained in a brief, we think that is an as-applied challenge. It's not ripe. There's no prejudice to any party to withhold a decision on that, let EPA take another look at it, see what happens. It's not a facial challenge. The one facial challenge potentially is the labor petitioner's argument that the statute flatly prohibits consideration of PPE. But on that one, they're also not prejudiced because of the way EPA goes about making its decisions. I'm not sure the question is one necessarily about prejudice because my question to the industry petitioners is where does the court have the authority to issue this relief? I mean, the EPA confessing error on the 2024 rule? No, your honor. Because there are some precedents in which an agency confesses error and then we vacate and remand the rule sometimes. I mean, there are a couple of cases. There's not a lot of reasoning in our case law about why a remand is appropriate. Of course, I understand there's a change in administration. New administration would like to take a different approach, but this case is still here. The case is still here. So what is our authority to simply ignore the case and effectively issue a remedy without deciding any of the merits? I mean, it seems the government should have some well-developed theory of this because this is an argument that's being made in a number of cases. Right. Well, and because we don't see it as a court issuing remedy. We see it as the court doing what is common to have an abeyance while an agency undertakes rulemaking. That's not unusual for the court to decide through its inherent power to manage this document to stay at hand while the agency undertakes rulemaking. The only, I think, the only potential issue, aspect of this- It's between an abeyance and a remand. So our cases, I mean, we of course can hold a case in for some limited period of time while the administration reconsiders a rulemaking or something like that. But our cases are quite clear that we can't do unlimited abeyances, just sort of open-ended abeyances. And an abeyance keeps the case still here. But my understanding is what you're seeking is a remand to the agency, which would eliminate the case from our docket. Well, perhaps it's- So that's a different, that is a particular remedy. And what is your theory for why we have the authority to do that? Well, perhaps it's a terminology problem and not an authority problem because the only exercise of judicial authority we're asking for is the court to stay at hand because EPA has already announced its decision to go ahead and reconsider. There's no order necessary to direct the agency that here's a problem. Agency can engage in a new rulemaking at any time. Right. So to join the issue, I think, problem is, our position is that prudentially, the better course is not to make a ruling on these various issues while the agency proceeds. The agency doesn't need, as you said, the agency doesn't need the court issuing an order to allow it to reconsider. But prudentially, we're saying the court shouldn't, it shouldn't happen the same time. We say- Isn't the rule in effect, isn't the rule being challenged in effect as we speak? Yes. And the- So the relief you are asking for, would that affect whether the rule remains in effect? It would not, Your Honor. And that's what EPA said in its declaration was EPA intends to continue to implement the 2024 regulation while it's reconsidering. There's no change. There's no need for the court to issue an order on that respect. The only thing we're asking the court to do is to stay at hand. Otherwise, the agency proceeding can go forward. And that's not controversial. The perhaps more controversial part is what does the court do while that's happening? And we're not saying the court has to, of course, stay at hand. But the court, I think, clearly has discretion to wait. And here, we've given prudential reasons why it makes sense for the court to wait. So what is the government seeking? Are you seeking an abeyance or are you seeking a remand of the rule? Because those two things are not the same. An abeyance holds the case while the agency goes forward with new rulemaking. But the case is still here. We can lift the abeyance at any time and move to the merits. A remand, then the case is over here. And if industry petitioners want to, you know, I don't know, bring some other challenge or labor petitioners, then they would have to come back or institute a new petition, which may be time barred or not, depending on what's happening. But EPA's position is we're going to continue to enforce the 2024 rule. So what are you seeking, abeyance or remand? I'm not sure that those two remedies are consistent. I'm not sure you can get both. How do you get both? Well, two answers. One, we think this does fit within what the court did in 2018 in the solid waste case. But if the court today granted the abeyance and did nothing more, stayed its hands and we are not going to act until the agency completes its reconsideration, we have a timeline, that would satisfy the government. That would be enough because the agency has already made its own decision to go ahead and reconsider. So the exercise, as usual, for power asking for is really for the court to stay its hand. There's nothing. Remand, in a sense, I think we were using the remand in a sense to communicate that the agency wants the decision back. Remand has a technical meaning. When we remand a rule without vacator that has a particular meaning, it's not just some sort of atmospheric idea. Well, and again, in the 2018 use of abeyance decision, that's what happened. And that's the precedent that we pointed to. If the court is uncomfortable following that, then simply holding the case in abeyance and not making decisions until the court has the benefit of EPA's further reasoning, I think would accomplish the same thing. Can you cite two examples where we've held a case in abeyance on a rulemaking while a new rule was being considered, which could take a year, 18 months, two years? I can't cite you chapter and verse like docket numbers and those usually end up in unreported Yeah, I don't think that's unusual for the court to put a case into abeyance while the agency reconsiders. Do you have examples of that where the underlying rule isn't stayed? Because sometimes there will be a stay issued on a rule and then abeyance, there's no harm to any parties in the interim. I think we could provide citations to orders. They might not be, again, I don't think it's unusual to ask the court to hold a stay at hand while the agency reconsiders a rule that's not... So under your proposal, we would be holding the case as it is being presently presented in the present posture. That's right. And then depending on what happens on reconsideration, the agency issues a new decision. But on reconsideration, you're liable to make major changes in the rule, right? So then what have we held? I'm sorry, what? So then what have we held? What have we got now? You come back and say, we've completely changed the rule. So the thing you held, could you toss it, please? Is that what you're imagining? It depends on what the agency says. Let's assume that because that's certainly one distinct possibility here. For example, if you went with intervenors of argument on the determination question under the statute, that's a flat statutory question. And the agency has already taken a very clear position on how to read the statute. He's arguing they're wrong, that that statement is wrong. So if you adopted that, we'd have an entirely new case before us. We would, but I think your honor, there's other path to the decision. There's other possibilities the court shouldn't foreclose. For example, the question of whether to do single risk determination or to do risk determinations use by use. The agency might have a third path. The agency might on remand decide that it's perfectly consistent with the best reading of the statute to do that on a case by case basis and not make a decision in a framework rule, which is what's before the court. That would kick that underlying legal dispute out of this context and would have to be resolved on a case by case basis. It's a different case than the one we would be holding in advance. Well, at that point, that issue and the other issues parties would have to- You would be saying a couple of years from now, we've gone through all of this and we've changed our mind. We've altered it. We have some new ideas, so you don't need to hold it in advance anymore. Could you please dismiss it and we'll refile and could you set a briefing schedule? That's what you want. Well, that is one possible outcome and- I don't see any other possible outcome unless you're prepared to tell us no. We mostly accept what we've done. We just like to read it one more time in case anything occurs to us, but we don't see any major concerns. Well, I'm definitely not prepared to say that because I don't want to prejudge what the agency- No, and that's what I'm saying. The distinct possibility is two to three years from now, we'll come back and say, well, we reconsidered it. It's a different rule, different rationale, different reasoning, different administration, and so can you start briefing again? Well- And why isn't it a perfectly appropriate approach? The case is before us. It has been filed, proper challenges, interested parties, agency's position is on record. For us to slide with respect to certain statutory provisions, you're right or wrong in your assumptions. And then as you go forward and do whatever it is you want to do in a new regulation, you'll have those legal readings in front of you and you can set up any framework that you want. Well, a couple of reasons here. One, the agency has committed to doing it in a year. So the timeframe, we're not talking two to three years, but putting that aside, the statutory- That can really hold you to that commitment? Well, I mean, that's the agency's, that's what the agency- Reasonably given practice in this area, we're reasonably going to be able to hold you. We'll hear next March 1. You really believe that? It won't be March 1 because there will need to be time for the parties to evaluate what the agency does. Yeah, exactly. So we're already into a year and a half. So we'll pass your year date. That's not a reasonable supposition. The other point, Your Honor, is that on three of the four issues, the parties are not, there's no adversity. The government has not withdrawn its brief. We're not saying our position is wrong because we're saying the agency wants to take another look at it and hasn't formulated a position. That's different than confessing a year, which we're not doing, but the court- All we would be doing then, if that's right, is saying, okay, you're right, assuming we're going that way. You're right. Now go ahead and do whatever it is you can do with the law now having been clarified. And let's say, based on your current supposition, we agree with your interpretation underlying. Now, if you want to change the frame in a way that's consistent with our best reading of the statute, help yourself. But why would we waste time doing it otherwise? You're right. You have not withdrawn. The government's position is before us and it is a subject of dispute. There's no question it's a subject of dispute. No matter what the industry frames its argument, they're clearly disputing heavily on some critical points that go to the best reading of the statute. We would resolve that. Then you can do whatever you want to do. Well, the place I disagree with you, Your Honor, is the government's position is not before you. I'm sorry. The government's position is not before you because the government's position is not what's in the brief. The government's position is that the agency wants to reconsider. No, the government's position is before us in the regulation and the support of the regulation. There's no doubt that's here. Well, the regulation is definitely on the books, but I think it would mischaracterize the government's position to say that we are arguing our brief. We are not arguing our brief. We're saying that that is not the current position. I don't know what the position is of this agency because the agency hasn't had a chance to reconsider. That's why we say it's not at first because the one petitioner that's bringing three of these four issues wants EPA to take another look. EPA wants to take another look. The government's position is not actually before the court. Let's suppose we grant your motion and hold the case in abeyance and stay our hand. We don't issue an order of remand. We just hold it in abeyance. EPA, in about a year, promulgates a new rule. Someone withstanding challenges that rule, either from the industry side or the labor side or the environmental side, some side. What happens then? Because they have to file a new petition, right? What happens to these petitions? We consolidate the new petition with these petitions, and we figure out which arguments are moved or not or whatever. How would we proceed? I think that's right, Your Honor, and I don't think that's unique. I think any time a case is in abeyance while the agency is reconsidering, we get a new rule. If the old petitions haven't been dismissed, for instance, a party challenging it wants to reserve its ability to challenge the 2024 rule. Let's say 2024 rules in effect, there's a 2026 rule. A party challenging the 2024 rule doesn't want to withdraw its position because what if that 2026 rule is held invalid? 2024 rule comes back. Party doesn't want to say, well, now I'm out of time. That's not fair. Let's keep that challenge in abeyance but live so it can be restarted if necessary. The challenges to the 2024 rule still on the book, still before the court where it's not doing anything. We get the 2026 rule. We evaluate. I think it would be consolidated. This court seems like the right venue for the new petitions, and we see what's a live issue and how the various stakeholders play out. Maybe there's different stakeholders. Maybe there's not. Maybe they're on different positions. We see what the agency's considered opinion is on the statutory questions. We evaluate the record and go forward. That is how I would envision this taking however long it takes. That would be the process. How should we factor in that Congress put the one-year deadline in the statute for the administrator to establish by rule process to conduct risk evaluation? And they said that, you know, not later than one year after June 22, 2016. And if we proceed the way that you would ask us to, we'd be, you know, at least a decade after that. Maybe that's okay for government work, but it seems problematic. It seems contrary to congressional intent. The reason I don't think so is because EPA met the deadline. EPA issued the risk evaluation framework rule back in 2017. There's nothing in the statute that says, that limits EPA's ability to reconsider that to issue a revised framework rule, which is exactly what EPA did in 2024 to do it again in 2026. The statute has an initial deadline, but says nothing about subsequent revisiting it, a deadline to revisit or a timeframe to revisit. So, I don't think we'd be constrained by the statute. The agency is not constrained by the statute if it wants to revise the framework rule. But has there been, I guess, the risk evaluation is the first step, right? And then there are actions that are supposed to take place based on the risk evaluation, right? Right. Risk management would be the actual regulating the uses. And has that occurred yet, or has that been stymied by all of the court challenge? EPA has issued risk management rules. That process has not halted. EPA has made risk determinations. So, you complete the risk evaluation phase by making a determination and gone on to risk management and has issued risk management rules, some of which are being challenged. But I guess what I'm trying to understand is then what happens to the current risk management rules while this is held in abeyance? Well, those would be, while this is held in abeyance and while EPA is reconsidering, EPA would continue, as said, EPA said it will continue applying the 2024 regulation. So, those regulatory actions would continue to play out and litigation would continue to play out. Once EPA has a 2026 regulation, then in issuing a new regulation, one of the questions EPA will have to answer is what's the retroactive, what's the applicability of that depending on regulatory decisions? EPA did that in 2024. There's one part of the 2024 regulation says that it's not retroactive and that EPA is going to apply this 2024 framework to the extent practical to things that had already started. EPA could decide to do the same thing in a 2026 regulation. So, not only is the substance of the new regulation unknown because EPA hasn't done but how that would affect pending risk evaluations is unknown and EPA will have to think about that. All you're saying that would happen here is that if we don't hold it in abeyance, you get a ruling from the court, the same rules would be in effect to the extent that the court doesn't disagree that there are legal problems with certain of the rules. And if we do hold in abeyance, again, you would continue to apply the existing rules. So, the only thing that would be added if we go ahead and take a case that's properly before us is the court's input where we are permitted to have input and under LOPA that would be in the offered. We would offer that. Otherwise, you'll be doing the same thing according to you. The rules would be in effect only changed if our best reading of the statute, say, for example, is more consistent with the industry argument than what is on the table right now. But otherwise, you're saying we go ahead with this until three, four, five years from now when there's a new regulation. You can always start notice and comment. Agencies always do that. But you're there's no justification that you're offering for us not to proceed to give an answer to the legal challenges that are before us. I'm just not seeing any answer whatsoever. It can't be about convenience because you say you're going to enforce the rule the way it is right now. Well, what we think is missing is if the court proceeds to the statutory questions, it would be without the benefit of the agency's interpretation. I mean, respectfully, that is not true. The agency on the record is on the record on why it did what it did. And I understand what the agency's position is on each one of these issues because they've stated their position in promulgating the rule. That's no mystery to us. And that's just not an answer because every time an agency says, well, let's have another notice and comment rulemaking, that can't be a reason to stop everything because agencies always have that authority to say we want to have a new notice and comment rulemaking. And our approach should be, go ahead, do your thing. That's not our responsibility. But if we have a case that's properly before us and it's raising legal issues that were properly raised and they're here and there's nothing that needs to be gained here because you say we're going to keep going with the same rule. I just don't get it. It seems, is the government backing off of its position that there should be a remand of the rule and focusing on advance? Well, I think the 2018 use-by decision still supports what we asked for, a remand and advance. I think that's solid as I said before, if the court doesn't want to follow that precedent, I think the relief of advance would allow EPA to weigh in, which is what we're asking for. But I'm not completely- And the advance standards are much more amorphous than the remand standards, arguably. And I mean, one thing I'm surprised you haven't said is that, I mean, it has been this court's practice to regularly hold rules in advance after a presidential transition. They did this when President Biden came in and also when President Trump came in. We've almost, I mean, overwhelmingly, we have granted those motions for advance. Advance, not of the rule, advance of the petition. Of the petition, but not a remand. But the advance is granted while the agency moves ahead with a rulemaking. Well, and so we've asked for revenge twice, actually. We asked for advance initially for the agency to consider whether or not, to decide whether or not it wanted to reconsider, whether this is one it wanted to take another look at. And now agency has made that decision and we're saying, hold it in advance and let the agency do that work. And again, we think a remand without vacature to allow the agency to do its work is appropriate and fits within this court's precedence. But you don't really need that if we hold the petition in advance. Well, the rulemaking, do you need a remand? I mean, the EPA can always move ahead with a new rulemaking, can reconsider its old rules. What does the remand add to, say, an initial year-long advance? Well, I think that gets into the reasoning behind USWAG and other cases that award that relief. And again, I think the agency can accomplish what it's asking for without the remand. I think the remand is not exercising the court's authority in this case because I disagree, Your Honor, that the statutory issues are not properly before the court. Again, three of the four issues are solely brought by a petitioner that has said they are not interested in proceeding. The fourth one, as we explained, it's not ripe. So I don't think the statutory issues are properly presented. I think the court potentially should stay at hand until the agency has a chance to weigh in. And given that, I think there's also procedural reasons why the court should stay at hand. It's not just a matter of waiting for the agency to articulate what it feels is the best interpretation for the court to give whatever weight is appropriate. Notice and comment rulemaking is the best way for the agency to proceed and to do so before the court weighs in. If the court, if notice and rulemaking comment not just on the merits, the substantive, arbitrary, and capricious questions that we're talking about, about PPE and things like that, but on the statutory interpretation to articulate in a proposal what the agency thinks is the best interpretation to receive comments, to consider those comments, and to present it to the court. That's a valuable process that the court would be losing if the court went ahead and made a decision based just on the 2020 report. We wouldn't be losing it, counsel. You've already gone through it. It's been done. I realize that we live in a strange world where change of administration has come to mean enormous things that I'm not entirely clear on, but it's still the same agency and it's still the same law and it's still the same public interest. And so the agency folks who are doing this work, I don't assume that they've all disappeared and that what they've done for the past five or whatever number of years has no meaning. It's not like the agency has no memory, history, legislative history. It's all there. You've done it. And so at appropriate time, parties can challenge what you've done because you said, okay, it's you, the agency has said, it's ready to be challenged because we've done our rulemaking, which the law, which Congress said, this is the way you do it. They've challenged it. It is properly here. They haven't written anybody so far as I know and say, we have no interest in this. We do not challenge the agency's position here. Now, you want to do that. They want to the agency's interpretation that is before the court. We accept that that's a different thing. They haven't done that. They're just saying, we'd rather you didn't go ahead. It'll work in our interest. We think if you kind of stay your hand and let things sit, they submitted a piece of paper, signed and said, we are bowing out. We concede EPA is correct because EPA is on the record. Whether you like that or not, they are on the record with this regulation. And if they came in and said, we concede, then you're right. Then you can go do your rulemaking or whatever it is you want to do. And the court then could think about a different kind of a case that is, well, the one contesting party, one or several. One contesting party has said, we concede. We have no dispute. They're just saying it's not convenient for us to have a dispute. So can you take that your honors? I don't know why we have to do that. We are. I think the reason is to follow the precedent. I know what you're saying. It is not a mandatory rule. Judge Rao has been raising that is not mandatory. We sit here for a reason. We're supposed to think this through. We take it very seriously. And we're sitting here and wondering why they have not conceded your position. True. But so they have a dispute. You know why I know that? Because they filed and said, we disagree. And the filing didn't say we agree with EPA. Well, you're right. I agree it's not a mandatory rule on the court to remand or to hold in advance. It's purely the court's discretion. But I think this case is all in all fours with the USWAG case that doesn't say that the USWAG, you're right, the USWAG case, the solid waste case doesn't say the court must hold it, stay at hand. But exactly the same facts are present here. We had industry petitioners that have challenges to a regulation. They've said they agree with the remand and advance. And environmental intervenors disagreed. Labor petitioners didn't weigh in on three of these four issues. They confirmed that when they stood up here. So the case is on all fours with USWAG. Granted, USWAG is not a directive that the court must do, but I don't see a way to distinguish how the court would reach a different action here. And in fact, there's good reasons why the court should follow the USWAG precedent and not just hold in advance, but go ahead and read. What's the good reason? The good reason is because that the agency, well, because the agency hasn't, I know you disagree with me, I don't know what you're going to say. What's the good reason? I can't figure it out. The agency has not articulated its view of the best way to stretch it. Well, you have the right to have notice and comment rulemaking again, if you want to go do it. That's not a reason. Well, the reason is your honor, we think the court should wait for that. Why? Well, the court doesn't have to wait, but that leads to better decision-making. That's keep asking. We're forgetting that Congress said something at the start of all of this. They had some requirements. I don't think they were contemplating. Let's go for a decade, see if we can come up with something. Well, let me go back to the 2017 regulation where these statutory issues were not joined. The Ninth Circuit and the safer chemicals had the similar issues before it, where the question was the challenge to using a single risk determination, the challenge to excluding conditions of use at the scoping stage. Based on the 2017 regulation, the court said, they're not right. We're not going to decide. The agency should be able to make the decision before this court weighs in, whether one possible decision point is maybe we go back to the 2017 regulation framework and don't speak to it. In that case, it would be improper for the court to... Well, I wouldn't say improper. The court will have ruled on something, which now the agency has taken away and said, that's not our regulation. At least in my mind. I can't imagine this ruling on anything other than the statutory questions that the Supreme Court has said should be litigated. But the statutory questions might no longer be live. After the remand and the agency... I think you would take that into account as you're doing a new rulemaking. You say, well, that's what the court said, but we're doing it a different way. That's fine. The court definitely has... Again, I'm not denying the court's power to do that, saying the court should... Well, your power to do that. We would just tell you, given the challenges before us, the agency's position and the challenges to it, here's what the best reading in the statute is, where that is appropriate. And that would be it, then we're done. Right. And the agency's position is the court should wait for the agency to weigh in on that. In abrogating Chevron, Loper didn't say ignore the agency. I'm not saying Loper gives us an answer on what we're chatting about now. They give us an answer with respect to our role when legal challenges properly before. Right. And the agency's position is the court should stay at hand in exercising that authority until the agency has a chance to reconsider, weigh in on what the statutory interpretation questions are on the ones that industry is not pressing, as well as the one labor is pressing. And at that point, make a decision, as Judge Wood said, after the procedural chips fall. What's your position on whether we can, A, or B, whether we should sever some of these issues, hold some in abeyance, but decide others? The government's position is that the court should keep the case together and hold and stay at hand on all the issues. But we recognize that the three issues that industry is the sole petitioner on require a different analysis than the one issue, the PPE issue. And we think the outcome is the same on all four of those issues. And therefore, it's appropriate for the court to stay at hand on all of them. But the analysis is different because of the one issue we talked about earlier, the statutory question of what does it mean to be a non-risk factor? Does that include PPE or not? On that one, we say it's not ripe and that the labor petitioners are not injured, they're not prejudiced if the court stays its hand. But that's a different analysis than the other three issues where we're saying, well, there's no real adversity. There's no real adversity because you're no longer defending what was said in your brief. And because industry petitioners on those three issues are the only petitioners challenging it, labor is not challenging that, and environmental parties are intervenors. And that takes us back to USWAC. That's exactly what happened in USWAC. And the court remanded and held in the appropriateness. I just have one quick question. Is the government's understanding is that Loper-Bright does not change the court's traditional discretion over abeyance? Is that correct? That Loper-Bright does not affect our ability to grant abeyance when there are statutory questions raised? Right. Loper-Bright on faith doesn't talk about that. No, of course. And I think it doesn't affect it because Loper-Bright... Well, environmental intervenors, when they stand up, they might make this argument because it's in their brief. They say the court should interpret statutes as if the agency wasn't here. We think that's not right. We think that's a misreading of Loper. There's still a role for the executive's view for the court to consider. It's not binding, obviously, on the court, but there's a role for the executive agency's statutory interpretation. So because of that, I think Loper doesn't disturb these traditional practices and the ability of the court to remand pending the agency's view on statutory interpretation. If environmental practitioners were right and Loper just completely cut out the executive, then I could see an argument why there wouldn't be a reasonable way. Well, it's not just cutting out the executive. It's also an argument that it affects our discretion to hold a case in abeyance. There's an Article 2 question. There's also an Article 3 question. And your argument is that it doesn't change either the Article 2 involvement or the Article 3 discretion to hold an abeyance. Right. I think the Article 3, there's still respect to the executive branch and the court should wait and get the implementing agency's decision. On the Article 3 side, the court clearly has the power to make the statutory interpretation. Like Judge Edwards said, we're not saying you can't do it. We're saying you should stay your hand and not do it and wait because of the Article 2 concerns. Thank you, Your Honor. All right. Thank you. We will now hear from counsel for respondent intervening. Good morning, Your Honors. My name is Tosh Sager on behalf of the respondent intervenors in support of EPA's final rule governing this risk evaluations. On remand, I think you heard EPA and industry say that this abeyance is not mandatory. It's discretionary and prudential. Our view is that after Loper Bright, it makes little sense to remand statutory issues back to the agency. Whereas here, it would be their third bite at the apple. In those circumstances, right, you've heard from the agency. You have their briefs. Giving them another shot, I don't think would inform your consideration of the issues. Loper Bright says we give due respect to executive views, right, an agency view. Relative to the consistency of the agency's interpretation here, it would be their third switch if they were to take a new view. Doesn't mean we automatically give it no respect. We just give it whatever respect it's due. It's not due as much as if the agency had the same view for 20 years, but that doesn't mean that it's due no respect or that their views are irrelevant, does it? I don't think we've argued that it's due no respect. I just think sending the statutory issue back to the agency for yet another bite at the apple won't really help illuminate the issues or the court's consideration in deciding those statutory issues. You had asked sort of procedurally how it might work. I want to note that I think it would create a bit of a procedural morass. Unlike other statutes here, petitions for the next rule can go to any circuit court, and indeed both framework rules, the 2017 and this one, there are multiple petitions in multiple circuits that are consolidated by a lottery. This petition, these sets of petitions were consolidated and sent here. It's entirely possible that the next set of petitions would be sent somewhere else, and you'd have one petition here, one petition in another circuit. I think that's another reason that counsel's against sending this back to the agency. I think, Judge Edwards, you noted that you can't hold them to the timelines. I think that's exactly correct. I think this court's practice shows that remands are holding things in advance for the agency to sort of do a new rulemaking doesn't... Suppose for the sake of argument that we were implying to find either that the labor petitioners don't have standing or that their challenge is not right, and so the only challenges that would be validly before us would be the industry petitioner challenges, and they are fine with abeyance and or remand. If that were the case, why go forward? Because the only parties that we would have jurisdiction to rule in favor of has told us that they're fine with us deferring, and they want to see what the new rulemaking... Because you're not asking us for any relief other than to just uphold the rule, right? Well, I would say two things. In that circumstance, if you're just talking about abeyance, formal adversity remains. I think, as this is Judge Edwards' point, they're just saying it's not convenient for us. They, being industry, would be saying it's not convenient for us to have a decision now. That doesn't eliminate the adversity that's here, and there's a true case of controversy that remains. I think my second point is that also distinguishes this from USWAG, where there was true level of sort of absence of formal adversity, and so I think they kind of want to have their cake and eat it, too, is how it feels to us. They want this petition here. They want you to hold onto it for however long it takes till the agency gets to a new view. These are statutory questions that have plagued this statute since the day it was enacted and amended in 2016, and it's this court's role to say what those statutory terms mean to set the rules of the road for the agency. It keeps flipping back and forth. That's having real practical consequences on the ground for chemicals that people are exposed to. I'll just give you one example. 1,4-Dioxane, the agency started it as one of the first chemicals in 2017. It's 2025. We don't have rules. We should have gotten rules in 2022 for this chemical, and we don't have them because the agency has to change its analysis between administrations to, like, the first under the Trump administration, they excluded a bunch of conditions of use. The Biden administration came in, said that's illegal. They added a bunch of conditions of use, found that the chemical was contaminating drinking water throughout the country, causing really severe risk of cancer. They issued a final risk determination in 2024. That's now being challenged, the supplement in the court, because the industry is saying you can't issue this supplement. This is a procedural rule, as your Honor noted, that should have been finalized in 2017 to set the rules of the road, and the uncertainty that remains is causing havoc in the administration of this program. So I think the prudential concerns that, again, they admit that this is a prudential decision to just deciding this case here. With that, if I could turn to the merits, unless there are any questions on remand itself. Why don't you turn to the merits? Thank you. Starting with the all conditions of use argument, I think your colloquy with my friend from representing industry confirms that their position requires reading into the words into the statute. The statute doesn't say only consider the conditions of use with the greatest exposure potential, and that violates the cardinal canon of statutory construction. That's this course decision in Neely. Congress wanted comprehensive risk evaluations that included all activities from initial manufacture to ultimate disposal, everything in between. That's how it's defined conditions of use, and they want piecemeal partial risk evaluations. I think there's maybe a concrete example I could give you that illustrates just how, just why their industry's position can't be correct. So if you imagine a small baby that's exposed to a widely used flame retardant, the flame retardant is in the baby's crib. The flame retardant is on the rug it crawls on. It's in its toys. To understand the risk the baby faces from this flame retardant, you need to look at all three. You need to be able to look at the combination of all three to understand the baby's total exposure. Industry's interpretation would allow EPA before it conducts any analysis to exclude one or all of those, and thereby miss the exposure the baby faces. It would also frustrate, and this is more on the single determination full chemical, it would frustrate EPA's ability to look at the combinations of those three activities to see the total exposure to the baby. There's no way to look use by use and understand, oh the baby's exposed to the rug, that's too small. The baby's exposed in its crib, that's too small. But that's what industry's interpretation would require. That's contrary to the text which requires determinations on the that requires EPA to protect against any combination of unreasonably risky activities. My friend representing industry, I think... Just to be clear, your friend on the other side would say, well you can consider all of those different uses at the risk management. So, let's say that that's that under the framework, the statutory framework, that doesn't work because it's too late. Exactly, it's too late. The statute requires, and this is 2605B4F, there's a requirement to assess the exposures under the conditions of use. Your Honor, I can quickly give you that is at addendum, the industry petitioner's addendum at 12. So, this is 2605B4F. It says, EPA shall assess available information on exposures for the conditions of use. That's B4F. I believe there's another provision. There are five of these. If you don't mind, I'll just pull it up myself. It's the one that also describes aggregator sentiments. Yeah, and then just below that in IV, it says, take into account the likely duration, intensity, frequency, and number of exposures under the conditions of use. That's required. Those are all, in this subsection, is entitled requirements for a risk evaluation. That's all required in the risk evaluation stage to look at how much exposure does a baby face from a rug? How much exposure does a worker face in the workplace? How much exposure does a fenceline community face breathing air that's contaminated by the nearby factories? And so, you have to get that exposure analysis right to understand. And I think, like, to understand, okay, here's the harmful dose of the chemical. That's hazard. Where's the exposure? Is it above? So, there's risk. Is it below? So, that there's not. That's what this stage risk evaluation requires. And what they want to do is take out pieces that contribute to exposure, allow EPA to remove those from the equation so that EPA underestimates exposure, and then you cannot take that back into account on the risk management. What about if your friend on the other side says, well, then, obviously, you need to consider PPE because PPE affects exposure, right? We have not weighed in in this litigation on PPE, and I'm not authorized to state it. So, you're not going to defend the EPA's rulemaking position? We've not taken a position. We're not going to. And I do want to note one thing, though. On every other issue that industry raised, we are defending in EPA's rule, and we adopted EPA's arguments. So, EPA's arguments today, I think I heard my friend Mr. Durkee say, you know, we're not standing on our briefs. That's irrelevant. We've adopted those arguments expressly in our brief. And so, those are all fully presented here. On the whole chemical approach, I think you heard my friends from industry say over and over again that there's no analysis of the individual activities, and that's a problem, and that's just wrong, both as a matter of the statute, EPA's implementing regulations, and practice. And if I could point your honor, just as a matter of sort of practicality, looking to an actual risk evaluation, this is at JA 387 to 451, where you can look and you can see how EPA looks at each activity and looks at the exposures faced by consumers, by workers. It looks at different scenarios, different products, each condition of use, and it analyzes, okay, how much are people exposed? And that's what drives EPA's assessment of risk. And EPA, in its regulation, says, we're going to look at the exposures for the conditions of use. We're going to compare them to the hazard level, and then we're going to make a risk characterization for the conditions of use, and they do so. And then, at the end, they say in their regulations, and again, this is the final regulation, excuse me, 702.39F3, EPA says, we're going to identify the conditions of use that contribute to the risk determination. So, those ones that are above the threshold for risk, we identify them, and they necessarily identify those that don't, and that feeds into the risk management process. EPA knows which ones are risky, which ones aren't. Again, I'll give you a specific example. This is at JA 385, where they identified those that they knew to be risky and those that they knew not to be risky. I think we pointed this out in our briefs, they had nothing to say on reply, because there is no answer. EPA does exactly what they claim EVA should be doing, and that's another reason their whole chemical argument fails. If there are no further questions on the merits, I would just say, again, these are basic statutory requirements that EPA has been flip-flopping on for a while. It's causing real harm. It means that protections are not being put into place. It's this court's job to say what the law is, to clarify the rules of the road. There is real formal adversity here, and prudential reasons, counsel, on deciding the case before the court. Thank you. Thank you. So, we'll hear a rebuttal from Mr. Ballenger. Yes. Let me just say one thing before you start, because you can attend to it if you want. On your side, I guess, on your side of the argument, utility solid waste was cited as a reason justifying our not deciding anything. That's a case in which there was a new statute that was enacted, and it might affect the agency's regulatory approach. That was the court's justification. That's not this case. There's nothing like the Winn Act, which I believe you referred to in each case, Your Honor. I'm not aware of anything that would serve that same function. You're not aware of what? Of any new statute that would serve the same function. No, there isn't. It's a little annoying to hear that citation being the justification why we would let this case go. It's an entirely different situation if there's a new statute that's been passed. Unless I got it wrong on solid waste. Excuse me, Your Honor. If that case does not guide the court's judgment, then I understand. Good morning, Sam Ballinger, Your Honor, for abstaining from joint rebuttal. My time is short. I will make just a few quick points to follow up on prior discussion. Even after Loper-Bright, this is not simply a matter of when the court addresses questions of law. The court does not address questions of law simply because they are questions of law. The court addresses these issues because there's a petitioner who has standing who brings a right claim to the court. Today, that is, the labor petitioners file against PPE, and the industry before the court now. But what the agency does on remand may address those concerns. If the agency promulgates a new rule, it is entirely feasible that the petitioners currently have standing, bringing their claims, are satisfied with that, and go away. And so there would never be a matter before the court. There would never be a right matter for the court to adjudicate because those parties may get everything they want to out of the amended rule. And that certainly does happen when the agency takes the rule back under reconsideration, and it arrives at an outcome that is acceptable to everybody. Now, obviously, other parties may subsequently take issue with that rule, but then they would have to show standing, and then they would have to show ripeness in much the same way. So it's not simply a matter, even in a Loper-Bright world, it's not simply a matter of when the court inevitably addresses these questions. It's a core issue of the court's adjudicatory authority for when and how it does in fact address these questions. And so that, I think, is one of the essential distinctions that justifies the abeyance in this case. And Judge Rao, you asked earlier about the authority of the court to issue the remand. I would point the court to Section 2816B, which authorizes the court to send the matter back down to the agency for further review. And if that does... What provision was that? Hold up here. Which? 2618B. Of Title 15? Yes, Your Honor. Okay. It's lengthy. I won't bother to recite it fully to the court. But what I would like to note is that to the extent the remand issue is a concern, I do think an acceptable compromise might be a 12-month abeyance, as we discussed earlier, which would serve similar functions in this case. So, but if the court does... Oh, the one other thing to emphasize as well, and I apologize, is that what the agency does on remand, it will issue presumably a new rule, but that rule, the scope of that rule, is different. The agency would have the authority to distinguish between what it addresses in the framework rule itself and what it leaves to adjudications under 6A in individual cases in the future. So, the agency will presumably issue a new framework rule, but the scope of that is not necessarily on all fours with the current presentation of the case. And that's one reason that holding this case in advance makes sense to preserve these challenges and to ensure that this rule does not evade review in the event that there's any change in the scope of remand. Counselor, I hear you saying there are things the agency might do. Yeah, of course. Anytime an agency decides to engage in new rulemaking, there are things they might do that look different than what they had previously done. That's old news. That's not a justification for our leaving a case that's properly before us for no apparent good reason. A good reason can't be because the agency might do something different, especially when I'm not even suggesting where they're really worried about anything. But in any event, we got a case that was properly presented, challenged, and it's probably before us. And the agency still has the right to go through rulemaking, which they say they're going to stay with this rule anyway and go through rulemaking. So, I don't know what the game is. The only game would be to the extent there have been legal issues beating a dead horse that have been around for almost a decade. The court is probably being asked to answer some of those questions. We have the authority under LOPA to do it. We can answer them. They may or may not be relevant in a new rulemaking. Your Honor, I understand what you're saying, but I would respectfully disagree that it's as simple as it's a pure question of law under LOPA and it's what's power to adjudicate, and so it can do so. The issue, as I said before, is simply is that the court should do that in the context of having a right claimed by a petitioner withstanding. Earlier, we discussed the deficient showing by the labor petitioners withstanding. And in that regard, too, I would like to highlight footnote 13 of their brief, where the labor petitioners admit they don't actually know whether or not this rule would apply in this way at all as they feel, which would seem to indicate a difficulty withstanding in that case. But I don't agree, Judge Edwards, that that is so simple and that the court should address the questions of law because they are presented here today. This court has routinely stayed his hand and allowed an abeyance when an agency indicates its intent to reformulate these issues. And on reformulation, the scope of that may change because the agency can divide between a Section 6A final rulemaking in the context of a given chemical and what it addresses in the framework. For example, PPE might be something that is not just period in the framework rule, but might be addressed more concretely. Nothing that we would say would foreclose that possibility. That is likely true, Your Honor. That is absolutely true. Unless the agency did something that was positively unlawful. Nothing forecloses the possibility that the agency would have this whole new different approach. We're going to use this framework and that framework and ideas that have never been thought of before. And my attitude still is, help yourself. But we have a case before us, we decided, and we move on. Certainly, Your Honor. I understand what you're saying. I still think that the matter of when it arises and scope arises matters and justifies prudentially, if not requiring at the moment, staying in the court's hand. But I understand what you're saying, that these are essentially questions of law that will be before the court. Do any of the industry petitioners invoke 2618B? Because that's a very specific procedure for additional submissions and presentations and modifications. Your Honor. So it doesn't talk about abeyance or remand. It says that if either a party or the administrator wants to introduce new submissions or presentations, then the court can order the EPA to consider that. And after that order of the court, then the administrator may modify or set aside the rule or make a new rule. So is anyone actually invoking 2618B explicitly? Because that does seem to be a mechanism, but I don't recall that being in the briefing. Perhaps I missed it. Your Honor, I believe you are correct that nobody explicitly invoked 2618B or attempted to make it showing or address that statute as it is presented. But it does... That was just the justification that you gave for the remedy for the abeyance and remand that you are seeking. But this is a whole different procedure that might actually give industry petitioners and EPA what they are seeking. But I don't see where this has been taught. Well, Your Honor, if the question is simply the court's authority to remand the agency, I'm saying it's not an abeyance question. If the question is the court's authority, then I would submit that that does provide the authority to the court. Provides the authority if a party seems to make additional submissions and presentations, but that's not what either EPA... I mean, perhaps EPA could say, we'd like to make additional presentations and consider more information. Please send it back to us. But I don't see anything from EPA making that or from industry petitioners. I mean, maybe that's still something that is available. I'm not sure if there's some sort of time limit, but that seems to be an avenue that hasn't been tried. No, Your Honor. I don't mean to say that the issue has been fully briefed or fully... Or briefed at all. It hasn't even been raised. Correct, Your Honor. But neither has the authority of the court to issue the remand been as addressed in the papers. I offer that simply as a note for what the court has had the authority to do. I'll accept that as your understanding of the concerns that we're raising. But that answer that you're offering really is inappropriate. Thank you. I'm done. All right. Give you a few seconds if you have any concluding things. Just my last concluding note would be to address the fact that the conditions of use... The conditions of use, the reason the whole chemical approach does not make sense is because the essential relationship in the statute is the relationship between Section B4A and Section 6A. B4A defines the risk, which triggers the authority of EPA to regulate under Section 6A. To the extent there's any ambiguity in what the scope of that risk evaluation is, Section 6A answers that question by saying very clearly that it is the manufacturing, it is the processing, the distribution of the chemical, which presents that risk. It presents that risk in the context of a given condition of use. Judge, I would agree with the notion that the agency's authority to regulate is based on its finding of a condition of use, of a harm within the condition of use, as carried through in that relationship between the two. Thank you. All right. Labor petitioners? I'll be brief. I'd just like to briefly address the claim that the FARC petition is not right. The law in this circuit is that a facial challenge to an agency policy is presumptively right if it raises purely legal issues, and prejudice would result from delaying a decision on the merits. Here, in USWAG, the court found that parties would suffer prejudice if a remand caused failure to vindicate our claim. The same thing would be true here. The delay also means that many of the risk evaluations and many of the risk management rules that have been issued are presumably going to have to be reworked to conform with whatever is eventually decided, some court eventually decides, Tosca meets. We think that's going to result in a substantial proliferation of litigation on a chemical by chemical basis. The other harm that befalls us, and this is the same harm that my colleague from the Chemistry Council mentioned, is if EPA moves forward and continues to consider information from our members about PPE use and misuse, and submit all that to the record, and then be prepared to challenge on a chemical by chemical basis what EPA decides if we're not happy with it. As Judge Rao pointed out, I think we have standing here, our members are not exposed to all chemicals in all uses. These issues may proliferate, and we may not be in a position to challenge what EPA does because we can't identify members who are exposed. So for all those reasons, we do think that a delay in reaching the merits would prejudice the labor petitioners. And I'd like to thank you for all your attention to this case this morning. Thank you. We'll take the case under advisement.
judges: Wilkins; Rao; Edwards